IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Robert Braun and
    Paula Braun,

        Debtors.

Case No. 18-23655-BEH

Chapter 7

Robert Braun and
Paula Braun,

        Plaintiffs,

v.

U.S. Department of Education and
FedLoan Servicing,

        Defendants.

Adversary No. 18-02184-BEH

## DECISION GRANTING SUMMARY JUDGMENT

      In 2014, debtor Robert Braun took out two parental loans to assist the debtors' son with his college education. At present the balance owed is $9,558.66. The Brauns filed an adversary complaint against the federal lender seeking a determination that the debt is dischargeable under 11 U.S.C. § 532(a)(8), because repaying the debt presents an undue hardship for them. Since filing this adversary proceeding, the debtors also have entered into three reaffirmation agreements to maintain loans on two vehicles. One loan has been satisfied; the second should be fully repaid within seven months, at which point debtors' net monthly income will be $98[1] higher than the monthly payment due on the student loans. The last of those vehicle loans should be repaid within fourteen months, leaving their net monthly income more than five times the monthly amount due on the student loan.

---

[1] *See infra* note 2.

The lender, the United States Department of Education ("DOE"), seeks summary judgment as to the second prong of the student loan dischargeability test from *Brunner v. New York State Higher Educ. Servs. Corp.* That prong requires that debtors could not maintain a minimum standard of living while repaying the loan for a significant portion of the loan repayment period. Alternatively, the DOE agrees to a twelve-month forbearance on the loan.

Applying the *Brunner* test, and in light of *Krieger v. Educ. Credit Mgmt. Corp.*,[2] the Court holds that the second prong of the *Brunner* test is not satisfied, and the debtors will be able to repay the loan during the loan repayment period while maintaining at least a minimum standard of living. For that reason, the Court will grant the DOE's motion for summary judgment.

## JURISDICTION

The Bankruptcy Court for the Eastern District of Wisconsin has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This proceeding is a core matter for which the Court has constitutional authority to enter final orders under 28 U.S.C. § 157(b)(2)(I).

## UNDISPUTED FACTS

Plaintiff Robert Braun works full-time in a lumber yard. In the past several summers, he also has worked for a friend's trucking business. Plaintiff Paula Braun, Robert's wife, works part-time as a receptionist, and receives Social Security disability because of a back ailment.[3]

---

[2] The Seventh Circuit follows the *Brunner* test when evaluating whether repayment of student loans creates an undue hardship. *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). More recently, in *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013), our Circuit Court warned against allowing the judicial glosses of some severe language in *Roberson* and *Brunner* to supersede the text of the statute itself.

[3] The bulk of the facts recited herein are set out in the DOE's Statement of Proposed Material Facts, to which the Brauns did not object or supply a competing proposed statement of facts. Additional facts are taken from the transcript of Robert Braun's Rule 2004 examination testimony, and from the debtors' filed schedules. The Court can take judicial notice of the filings in the debtors' main case. *Tuttle v. Educ. Credit Mgmt. Corp. (In re Tuttle)*, 600 B.R. 783, 789 n.2 (Bankr. E.D. Wis. 2019).

Robert Braun cosigned two Federal Direct Stafford William D. Ford Master PLUS loans to help fund his son's college education. The first of the loans was disbursed on August 28, 2014, with a principal balance of $10,788 and interest rate of 7.21%. The second loan was disbursed on September 1, 2016, with a principal balance of $4,786 and an interest rate of 6.31%. As of October 22, 2018, the combined balance on the two loans was $9,558.66, with monthly payments of approximately $119.00 due over the next ten years. There have been $8,657 in payments so far.

On April 18, 2018, some time after Mrs. Braun had lost her job, the Brauns filed for Chapter 7 bankruptcy. They filed this adversary proceeding ten days later, seeking to discharge the two PLUS loans which Robert Braun cosigned. They amended their complaint on September 18, 2018 and on April 26, 2019.

The Brauns' initial Schedules I and J reflected a total monthly income of $2,715.70, total monthly expenses of $3,270.00 and a negative net monthly income of $554.30. On June 12, 2018, the Brauns amended their Schedules I and J to reflect a total monthly income of $3,264.37, total monthly expenses of $3,171.91, and a positive net monthly income of $92.46. Mr. Braun explained that the change in income represented the work he does for a trucking company in the summers, and the fact that since filing their case, Mrs. Braun resumed part-time work.

On July 20, 2018, after having amended their schedules to show a positive net monthly income, the Brauns filed three loan reaffirmation agreements. One loan was secured by a 2001 GMC Sierra, the second was secured by a 2015 Chevrolet Equinox, and the third agreement reaffirmed a loan secured by both the Equinox and the Sierra. The Brauns signed each reaffirmation agreement, stating they "believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt." Those same three documents include their counsel's signature certifying that "this agreement does not impose an undue hardship on the debtor or any dependent of the debtor."

During discovery, Mr. Braun testified that since filing for bankruptcy, the debtors have completed paying off one of their three car loans (the loan secured by the 2001 Sierra), and thus no longer owe the monthly payment of $242.21. Additional financial information supplied by the debtors reflects that the second loan, secured by the Equinox and calling for a monthly payment of $378.40, will be paid off by June 2020. The financial information that the Brauns provided also reflects that the third loan, secured by both vehicles and calling for a monthly payment of $571.30, will be paid off by January 2021.

In his testimony, Mr. Braun did not identify any specific expense that will prevent him from using the $949/mo. in income that will be freed up after completion of the two remaining car loans, to repay the $119/mo. student loans. He instead pointed to anticipated "normal everyday increases with food, insurance, and stuff like that," but did not assign dollar amounts. Mrs. Braun did not testify.

## ANALYSIS

Summary judgment is appropriate if the pleadings and affidavits on file show there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). At the summary judgment stage, the court's role is *not* to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A factual dispute is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find in favor of the nonmoving party. *Id.* at 248. For a fact to be material, it must be "outcome determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291-92 (7th Cir. 1997).

The moving party bears the burden of establishing that there is no genuine issue about any material fact and that the moving party is entitled to

judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether there is a genuine issue of material fact, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436-37 (7th Cir. 2000).

### A. The Exception to Discharge for Student Loans.

The discharge provided by the Bankruptcy Code is meant to give debtors a financial "fresh start." *In re Chambers*, 348 F.3d 650 653 (7th Cir. 2003). For many, it is a qualified fresh start, because Congress designated student loans as one of the specific debts excluded from the general discharge. 11 U.S.C. § 523(a)(8). Because such loans are presumptively non-dischargeable, debtors have the burden to show that excepting student loan debts from their discharge would impose an undue hardship upon them and their dependents. 11 U.S.C. § 523(a)(8); *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (citing *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).

The *Brunner* test for undue hardship adopted by the Seventh Circuit requires a three-part showing by a debtor: (1) that he or she cannot maintain, based on current income and expenses, a "minimal" standard of living if forced to repay the loans; (2) that additional circumstances exist indicating this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *In re Roberson*, 999 F.2d at 1135. Recently, the Seventh Circuit has cautioned against applying this multi-factor test so restrictively as to overtake the language of the statute itself, which requires only "undue hardship." *Krieger v. Educational Credit Mgmt. Corp.*, 713 F.3d 882, 884-85 (7th Cir. 2013) (warning against allowing "judicial glosses, such as the language in *Roberson* and *Brunner*, to supersede the statute itself," and noting that the phrase "certainty of hopelessness" sounds more restrictive than the statutory term "undue hardship"). Other courts regard *Krieger* as softening the *Brunner*

"certainty of hopelessness" framework for the second prong. *See, e.g., Manion v. Modeen (In re Modeen),* 586 B.R. 298, 303-04 (Bankr. W.D. Wis. 2018) (explaining that the Seventh Circuit has "relented" on the high bar set out in *Roberson*, looking instead as to whether "there is not a brighter future in store" or "exceptional hopeless circumstances"); *Echelbarger v. U.S. Dep't of Educ. (In re Echelbarger),* 600 B.R. 39, 48 (Bankr. S.D. Ind. 2019) (noting that "recently the Seventh Circuit has shown more compassion" when applying the second *Brunner* prong).

The Bankruptcy Code does not define "undue hardship" as used in sec. 523(a)(8), but the statutory text suggests that Congress did not mean to permit "garden-variety" hardship of the kind accompanying all bankruptcy filings. *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn),* 339 F.3d 559, 564 (7th Cir. 2003). Debtors must prove all three prongs by a preponderance of the evidence. *Goulet v. Educ. Credit Mgmt Corp.,* 284 F.3d 773, 777 (7th Cir. 2002) (citing *Grogan v. Garner,* 498 U.S. 279, 291 (1991)). A debtor who fails to establish any one of the *Brunner* prongs does not meet his burden, and consequently, the court need not proceed with the remainder of the inquiry. *Id.*

Here, it is the parent, and not the student, who is the borrower. Substantial caselaw reads sec. 523(a)(8) to apply to parent-borrowers as well as student-borrowers. *See, e.g., Wells v. Sallie Mae (In re Wells),* 380 B.R. 652, 658 (Bankr. N.D.N.Y. 2007) (describing that the majority of courts conclude that sec. 523(a)(8) "excepts from discharge a guaranteed education loan debt even if the debtor is not the beneficiary of the loan," and citing cases).

The DOE argues that the Brauns cannot meet the second *Brunner* prong, and reserves argument on the two other prongs. The debtors assert that whether their reaffirmed vehicle loans constitute "extravagant" expenses is a factual determination that cannot be decided on summary judgment. The debtors also suggest that repayment of the PLUS loans is appropriate for deferral, or, citing authority from outside the Seventh Circuit, for partial discharge.

## B. Additional Circumstances Do Not Show that an Inability to Pay Will Persist.

The second *Brunner* prong asks whether additional circumstances exist that would indicate that the Brauns' inability to pay while maintaining a minimum standard of living is likely to persist for a significant portion of the repayment period. *Tetzlaff v. Educ. Credit Mgmt. Corp.*, 794 F.3d 756, 759 (7th Cir. 2015). In 2002, the Seventh Circuit explained that student loan discharges should require evidence "of additional exceptional circumstances, strongly suggestive of continuing inability to repay." *Goulet*, 284 F.3d at 778 (quoting *In re Roberson*, 999 F.2d at 1136). Factors that can be considered include the debtor's age, education, job skills, employment history, any significant physical or psychiatric impediments to securing employment, the size of the debt, and whether the debtor has any dependents. *See Krieger*, 713 F.3d at 884-85 (bankruptcy court did not err in concluding that the second *Brunner* prong was met when the 53-year-old debtor lived in a rural area with few jobs, lacked the resources to travel in search of employment elsewhere, applied unsuccessfully for about 200 jobs over a ten-year period, and had not held a job since 1986).

To show that a debtor's state of affairs is likely to persist for most if not all of the loan duration, "a debtor must precisely identify his problems and explain how his condition will impair his ability to work in the future." *In re Nelsen*, 404 B.R. 892, 895-96 (Bankr. E.D. Wis. 2009) (concluding that neither debtor's age of 57, nor difficulty caused by business downturn due to slow economy, qualified as "additional exceptional circumstances"); *Vargas v. Educ. Credit Mgmt. Corp. (In re Vargas)*, No. 10-4022, 2010 WL 5395142, at *5 (Bankr. C.D. Ill. Dec. 22, 2010) (debtor's only identified problems were his age of 57 and lack of desire to obtain employment other than at the Salvation Army, despite previous work as a certified nursing assistant and holding a bachelor's degree in journalism—neither circumstance was insurmountable so as to meet the second *Brunner* prong).

Here, the debtors make no "additional exceptional circumstance" argument. The record does not include either Robert or Paula Braun's age, and they do not argue that age is a reason to find that their present inability to pay the student loans will persist. *See also, Platt v. U.S. Dept. of Educ., et al. (In re Platt)*, No. 15-50302, 2018 WL 8367718, at *6 (Bankr. S.D. Ind. May 3, 2018) (noting that, while debtors were in their fifties and sixties, courts have rejected arguments that age alone satisfies the second Brunner prong) (citation omitted). *See also, Spence v. Educ. Credit Mgmt. Corp. (In re Spence)*, 541 F.3d 538, 544 (4th Cir. 2008) (finding no "additional circumstances" outside of normal hardships faced by bankruptcy petitioners that would render debtor's situation hopeless, who was 62 years old and had low-paying job). Nor do debtors argue that the other factors identified by *Goulet* should excuse repayment of the PLUS loans.

The debtors assert, in a sentence, that whether their reaffirmed vehicle loan payments should be considered in the undue hardship analysis is a question of fact. But they do not dispute their loan amounts or repayment timetables. Moreover, several cases describe facts similar to the Brauns' circumstance of reaffirmed debt, and conclude there is no undue hardship. In *In re Williams*, for example, a debtor sought to discharge her student loans based on undue hardship, but the court pointed to evidence that her monthly expense would decrease in the near future once her car loan was paid off, and therefore she could not meet the second *Brunner* prong. 492 B.R. 79, 91 (Bankr. M.D. Ga. 2013). In *In re Tinsley*, the debtor financed the purchase of a brand-new Dodge while her student loan dischargeability matter was pending, generating a monthly car payment of $623 for the ensuing six years. No. 17-1622-ABA, 2018 WL 6819515, at *4-8 (Bankr. D.N.J. Dec. 26, 2018). In concluding that the debtor Tinsley did not meet the second *Brunner* prong, the court noted that while the debtor's student loan repayment duration was just shy of eighteen years, her expenses would "dramatically decrease" within six years, as her car loan would be paid and her two children would have

graduated from college.  Admittedly, some courts give little weight to the income bump after paying off a car loan when they assume that purchase of a replacement vehicle will soon follow.  *See, e.g., McDowell v. ECMC (In re McDowell)*, 549 B.R. 744, 755-56, 770-71 (Bankr. D. Idaho 2016) (explaining that debtor's car had over 200,00 miles on it, was experiencing mechanical problems, and likely would be replaced in the next two years).  Nonetheless, the guiding principle from each of these decisions is that when voluntary payment of expenses could be foregone (not merely replaced), and the same funds used to pay the student loans, the debtor will fail to carry his burden on the second *Brunner* prong.

The DOE's brief juxtaposes the debtors' reaffirmation agreements, which assert that paying their car loans does not impose an "undue hardship" according to sec. 524(m), with their assertion of "undue hardship" under sec. 523(a)(8) as interpreted by *Brunner*.  Section 524(m) presumes that reaffirmation of a debt would constitute an undue hardship "if the debtor's monthly income less the debtor's monthly expenses . . . is less than the scheduled payments on the reaffirmed debt."  Debtors do not expressly compare the Code's two uses of the phrase "undue hardship."

The Court perceives a substantive distinction between sec. 524(m)'s definition of "undue hardship" and the multi-factor test for sec. 523(a)(8) "undue hardship" as set out in *Brunner* and adopted by *Roberson*.  *See, e.g., In re Nitcher*, 606 B.R. 67, 76 (Bankr. D. Or. 2019) (rejecting debtor's argument that expenses exceeding income applies equally to measure "undue hardship" for purposes of reaffirmation and for dischargeability of student loans); *In re O'Hearn*, 339 F.3d at 564 (discerning that "undue hardship" for purposes of sec. 523(a)(8) is more pervasive than "garden-variety" of hardship normally seen in bankruptcy filings); and *Salinas v. United Student Aid Funds, Inc. (In re Salinas)*, No. 02-C-234-S. 2001 WL 829951, at *2 (W.D. Wis. June 13, 2001) (accepting that where expenses exceed income may be sufficient to meet first prong of *Brunner*, more evidence is needed to satisfy the second and third

prongs). Instead of fully limning each test here, the Court accepts that where debtors admit no undue hardship for sec. 524(m) purposes, such conduct, against the backdrop of specific loan amounts, can defeat an assertion of inability to maintain a minimal standard of living while repaying the student loan. *In re Clark*, 465 B.R. 896, 899 (Bankr. N.D. Ala. 2012) (debtor's reaffirmation of a debt for electronic equipment at $50 per month, plus option for income contingent repayment plan on student loans negated a finding of undue hardship under sec. 523(a)(8)).

After they filed this adversary proceeding, the Brauns asserted that it is no undue hardship for them to continuing paying their three vehicle loans, meaning their expenses would not exceed their income by making those payments. At a minimum, the same assertion will remain true once one or more of those car loan obligations cease. That will be the case for the Brauns by June 2020, and the DOE is willing to defer their student loan repayment for twelve months hence. Even if the debtors need to replace their 2001 Sierra in the near term and rebalance their asserted present negative monthly income, the additional funds available after payment of the remaining two vehicle loans is $781/mo. Subtracting the PLUS loan payment of $119/mo. leaves $662/mo. for a replacement vehicle and other necessary items, such as increased insurance premiums. Given that additional funds soon will be freed up, plus the offer of a deferral, the Court concludes that "brighter days are in store," and the undisputed material facts on summary judgment reveal no precisely identified, additional, exceptional circumstances that would prevent these debtors from maintaining a minimum standard of living for a substantial portion of their student loan repayment period.

This conclusion obviates the need to consider a partial discharge, assuming such a step is authorized by the Code. *Compare Modeen*, 586 B.R. at 305-06 (relying on caselaw from other circuits to weigh the equities to grant partial discharge of student loan debt) *with Merriwether v. Educ. Credit Mgmt. Corp. (In re Merriwether)*, No. 02-2424, 2003 WL 22722036, at *3 (Bankr. E.D. Wis. Nov. 5, 2003) (holding that sec. 523(a)(8) is plain on its face, and does not

permit a partial discharge); *Armstrong v. U.S. Dep't of Educ. (In re Armstrong)*, No. 10-8118, 2011 WL 6779326, at *9 n.12 (Bankr. C.D. Ill. Dec. 27, 2011) (specifically declining to consider partial discharge, based on a lack of Code authority); *and Echelbarger*, 600 B.R. at 50 (explaining the court's hesitance to conclude that sec. 523(a)(8) permits partial discharge, citing *Grigas v. Sallie Mae Serv. Corp. (In re Grigas)*, 252 B.R. 866, 870-71 (Bankr. D. N.H. 2000) (collecting cases)).

## CONCLUSION

For the reasons stated above, the debtors have not met their burden to establish that repayment of Robert's cosigned student loans would impose an undue hardship under 11 U.S.C. section 523(a)(8). The Court will enter judgment in favor of the defendant DOE and against the plaintiffs Robert and Paula Braun. The Court will issue a separate order concurrent with this written decision.

Dated: November 27, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge